IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| CAROLYN M.[1], ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 7:20-CV-88 |
| ) | |
| KILOLO KIJAKAZI[2], Acting ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION**

Plaintiff Carolyn M. ("Carolyn") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") finding her not disabled and therefore ineligible for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act ("Act"). 42 U.S.C. §§ 401–433; 42 U.S.C. § 1381-1383f. Carolyn alleges that the Administrative Law Judge ("ALJ") erred by failing to properly: (1) determine her RFC and perform a function-by function analysis; and (2) assess her subjective allegations. I conclude that substantial evidence supports the Commissioner's decision in all respects. Accordingly, I **RECOMMEND GRANTING** the Commissioner's Motion for Summary Judgment (Dkt. 16) and **DENYING** Carolyn's Motion for Summary Judgment (Dkt. 14).

**STANDARD OF REVIEW**

This court limits its review to a determination of whether substantial evidence supports the Commissioner's conclusion that Carolyn failed to demonstrate that she was disabled under

---

[1] Due to privacy concerns, I use only the first name and last initial of the claimant in social security opinions.

[2] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is hereby substituted for Andrew Saul as the defendant in this case.

the Act.[3] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations and alterations omitted); see also Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (emphasizing that the standard for substantial evidence "is not high"). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Mastro, 270 F.3d at 176 (quoting Craig v. Chater, 76 F.3d at 589). Nevertheless, the court "must not abdicate [its] traditional functions," and it "cannot escape [its] duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). "The inquiry, as is usually true in determining the substantiality of evidence, is case-by-case." Biestek, 139 S. Ct. 1148. The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

## CLAIM HISTORY

Carolyn filed for SSI and DIB benefits in January 2016, claiming that her disability began on September 1, 2014, due to COPD, GERD, incontinence, sleep apnea, arthritis in her neck, pain in both shoulders, numbness in hands and fingers, pain in her low back, right hip and

---

[3] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

2

right knee, depression, and anxiety. R. 241.[4] The state agency denied Carolyn's claims at the initial and reconsideration levels of administrative review. R. 90–117. ALJ Thomas Erwin held a hearing on November 7, 2018 to consider Carolyn's claims for DIB and SSI, which included testimony from vocational expert Asheley Wells. R. 52– 89. Carolyn was represented by counsel at the hearing. On December 26, 2018, the ALJ entered his decision considering Carolyn's claims under the familiar five-step process[5] and denying her claim for benefits. R. 34–46.

The ALJ found that Carolyn suffered from the severe impairments of obesity, degenerative disc disease and mild curvature, arthralgias, hypertension, diabetes, chronic obstructive pulmonary disease (COPD) and sleep apnea. R. 37. The ALJ determined that these impairments, either individually or in combination, did not meet or medically equal a listed impairment. R. 39. The ALJ concluded that Carolyn retained the residual functional capacity ("RFC") to perform a limited range of light work. R. 41. Specifically, Carolyn can stand and walk for 4–6 hours in an 8-hour workday; cannot crawl or be exposed to hazards or unprotected heights; can occasionally climb ramps and stairs, balance, stoop, kneel and crouch; and can tolerate occasional exposure to vibrations and pulmonary irritants. R. 41.

---

[4] Carolyn's date last insured was September 30, 2020; thus, she must show that her disability began on or before this date and existed for twelve continuous months to receive disability insurance benefits. R. 36; U.S.C. §§ 423(a)(1)(A), (c)(1)(B), (d)(1)(A); 20 C.F.R. §§ 404.101(a), 404.131(a).

[5] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R.§ 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. At the fifth step, the burden shifts to the Commissioner to establish that the claimant maintains the RFC, considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

The ALJ determined that Carolyn can perform her past relevant work as a doctor's office receptionist, tax preparer and telephone representative. R. 46. Thus, the ALJ concluded that Carolyn was not disabled. Id. Carolyn appealed and the Appeals Council denied her request for review on December 11, 219. R. 1–3.

## ANALYSIS

Carolyn alleges that the ALJ failed to conduct a function-by-function analysis when assessing her RFC, and specifically failed to make specific findings regarding how long she can stand and sit and whether she would need breaks due to pain. Pl. Br. Summ. J. p. 14.

Carolyn's medical records reflect that she is obese and has been diagnosed with diabetes, hypertension, GERD, COPD, depression, sleep apnea, and arthralgias. Carolyn smokes a pack of cigarettes a day, despite her doctors' encouragement to stop smoking. R. 387–389, 459. Carolyn's records reflect complaints of chronic low back pain (R. 361), and chronic pain in her right hip and knee. R. 352–53.

Carolyn testified at the administrative hearing that she is unable to sit more than 30 minutes at a time due to her lower back pain and cannot stand more than 30 minutes at a time due to pain in her back and right hip. R. 72–74. Carolyn currently works at Sam's Club handing out food samples six hours a day, four days a week. Carolyn testified that she receives special job accommodations allowing her to sit on a stool for 30 minutes every hour, as she is able, based upon the number of customers at her station. R. 73–74. Carolyn also testified that it often gets so busy at Sam's that "there is no sitting because if there's somebody coming to my cart I can't sit down, I have to stand. And if I constantly have people coming—like, if I'm doing a demo that everybody likes I'm a really popular girl that day, you know, so they—there's not really a whole lot of sitting…" R. 73–74.

On November 14, 2016, state agency physician Robert McGuffin reviewed Carolyn's records and determined that she could lift and carry 20 pounds occasionally and 10 pounds frequently could stand and/or walk for 4 hours in an 8-hour workday; could sit for 6 hours in an 8-hour workday; and could occasionally climb ramps and stairs, balance, stop, kneel, and crouch. R. 96–98.

On June 7, 2017, consultative physician William Humphries, M.D., examined Carolyn and provided an opinion as to her functional capacity. R. 458. Dr. Humphries noted that Carolyn complained of recurrent low back pain, with a prior discectomy in the 1990s, that is worse with bending and lifting. Id. Carolyn also noted dull neck pain, right hip pain, right knee pain, COPD, sleep apnea, diabetes and intermittent pain in her shoulders and hands. Id. Upon examination, Carolyn had tenderness to palpation in her low back, negative straight leg raising, no significant tenderness or deformity of her upper or lower extremities, and diffusely painful hips. Carolyn moved on and off the table without difficulty and had full grip strength. Carolyn's gait was mildly antalgic on the right with guarding of her low back movement, she had normal strength in her lower extremities, with no motor loss. R. 459.

Dr. Humphries diagnosed Carolyn as overweight with COPD; polyarthralgia in her right hip, knee, shoulders, hands and feet with possible mild degenerative joint disease; and degenerative disc disease of the cervical and lumbar spine. R. 460. Dr. Humphries determined that Carolyn could sit for 6 hours in an 8-hour day, stand and walk for 6 hours in an 8-hour day, lift 20 pounds occasionally and 10 pounds frequently, and occasionally climb, kneel, crawl, stoop and crouch. Id.

On July 31, 2017, state agency reviewer Wyatt Beazley, III, reviewed Carolyn's record and determined that she could lift 20 pounds frequently and 10 pounds occasionally, stand and

walk 4 hours in an 8-hour day, sit for 6 hours in an 8-hour day; and occasionally climb ramps and stairs, balance, stoop, kneel, and crouch. R. 112–114.

The ALJ reviewed Carolyn's medical records, her testimony during the administrative hearing, and the physician opinions. R. 42– 45. The ALJ noted that Carolyn's diabetes and hypertension were generally controlled with medication and she generally had normal physical and psychiatric examination findings. R. 42. The ALJ noted that Carolyn complained of back and knee pain in 2014, but had no deficits with gait, strength, or sensation, and did not continue to complain regularly about back or knee pain her to treating physicians. Id. The ALJ reviewed X-rays of Carolyn's right hip, lumbar spine, and lungs, which reflected mild curvature and degenerative changes to her lumbar spine, and clear lungs. R. 43. The ALJ noted that Carolyn sought treatment for her chronic conditions, which were managed with medication, and that on March 23, 2018, she had a normal physical examination. R. 43.

The ALJ reviewed the opinions of state agency physicians Dr. McGuffin and Wyatt Beazley, and gave their opinions "partial weight," as they have a high level of understanding the Social Security Disability program and reviewed all the available evidence in the record. R. 45. The ALJ determined that Carolyn could stand and walk 4 to 6 hours in an 8-hour workday based upon her hearing testimony and found that the state agency physician's recommended complete prohibition of pulmonary irritants was not warranted by the record. R. 45.

The ALJ noted that Carolyn's treatment largely consisted of medication management with gabapentin, Celebrex and Lexapro, and she was not on any significant pain medication, muscle relaxers, or other treatment. The ALJ noted that Carolyn did not see a specialist, other than a pulmonologist, and was not referred for physical therapy, pain management, or

chiropractic care. The ALJ found that Carolyn did not regularly complain of musculoskeletal pain to her treatment provider. R. 45.

The ALJ reviewed Dr. Humphries' consultative opinion and gave it partial weight, finding it largely supported by his contemporaneous examination findings of mildly reduced range of motion in Carolyn's spine, hips, and knees, tenderness to palpation of her back and mildly antalgic gait. The ALJ disagreed with Dr. Humphries' complete prohibition of exposure to fumes, finding that Carolyn's COPD was generally controlled with medication, and her pulmonary examinations were regularly normal. R. 45.

The ALJ noted that Carolyn stopped working at her previous job because her employer was arrested, not because of any physical or mental limitations. The ALJ also noted that the record does not reflect any significant changes in Carolyn's symptoms or treatment prior to and after her alleged disability onset date. Id.

The ALJ stated that he restricted Carolyn to light work with standing and walking 4 to 6 hours "to accommodate for claimant's obesity, degenerative disc disease and mild curvature, arthralgia, hypertension, diabetes, COPD and sleep apnea." R. 44. The ALJ found that the record supports a finding that Carolyn can stand or walk for 4 to 6 hours in an 8-hour day and noted that Carolyn testified that she was working shifts of six hours and would often be so busy that she would not be allowed to sit. R. 45, 74. The ALJ noted that Carolyn cannot crawl due to her degenerative disc disease and obesity and cannot be exposed to hazards or unprotected heights due to her sleep apnea and resulting fatigue. Id.

Carolyn asserts that the ALJ failed to assess her limitations on a function-by-function basis. Specifically, Carolyn asserts that the ALJ erred by failing to specifically state how long she can sit or standing before needing to change positions. Carolyn acknowledges that the ALJ

7

found that she can stand and walk for 4-6 hours in an 8 hour workday which Carolyn notes "seems to be designed to account for the fact that she is able to sit on occasion throughout her workday, but it fails to include any specifics (how long she can stand before she needs to sit, and how long she needs to sit before she can stand again) that are more reflective of how she actually spends her day at work." Pl. Br. Summ. J. p. 15. Carolyn asserts that the vocational expert did not consider that she would need to alternate between sitting and standing throughout the workday.

SSR 96-8P requires the ALJ to include a narrative discussion describing how the evidence supports his conclusions when developing the RFC. Teague v. Astrue, No. 1:10-cv-2767, 2011 WL 7446754, at *8 (D.S.C. Dec. 5, 2011). The ALJ "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8P at *7; Meadows v. Astrue, No. 5:11-cv-63, 2012 U.S. Dist. LEXIS 115150, at *24, 2012 WL 3542536, at *8 (W.D. Va. Aug. 15, 2012) (citing Davis v. Astrue, No. 9-cv-2545, 2010 U.S. Dist. LEXIS 132972, at *15-16, 2010 WL 5237850, at *5 (D. Md. Dec. 15, 2010)); Monroe v. Colvin, 826 F.3d 176, 189, (4th Cir. 2016) (emphasizing that the ALJ must "build an accurate and logical bridge from the evidence to his conclusion" and holding that remand was appropriate when the ALJ failed to make "specific findings" about whether the claimant's limitations would cause him to experience his claimed symptoms during work and if so, how often).

A function-by-function analysis requires the ALJ to develop an adequate RFC that accounts for the work activities the claimant can perform given the physical or mental impairments affecting his ability to work. Importantly, the ALJ must explain the conclusions reached and explain any record evidence which contradicts the RFC determination. See SSR 96-

8P, 1996 WL 374184 (S.S.A. July 2, 1996).[6] The ALJ is instructed to cite specific medical facts and non-medical evidence supporting his conclusion, discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis, describe the maximum amount of each work-related activity the individual can perform, and explain how any material inconsistencies or ambiguities in the evidence were considered and resolved. SSR 96-8P, 1996 WL 374184, at *7.

In Mascio v. Colvin, the court rejected a "per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis," agreeing instead with the Second Circuit that "'[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review.'" Mascio, 780 F.3d at 636 (citing Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013)). "The Mascio Court held remand was necessary, in part, because the ALJ failed to indicate the weight given to two residual functional capacity assessments which contained relevant conflicting evidence regarding the claimant's weightlifting abilities." Newcomb v. Colvin, No. 2:14–CV–76, 2015 WL 1954541, at *3 (N.D. W. Va. Apr. 29, 2015).

Here, the ALJ performed the required function-by-function analysis. He appropriately considered Carolyn's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis and described the maximum amount of each work activity Carolyn

---

[6] Social Security Rulings are "final opinions and orders and statements of policy and interpretations" that the Social Security Administration has adopted. 20 C.F.R. § 402.35(b)(1).  Once published, these rulings are binding on all components of the Social Security Administration. Heckler v. Edwards, 465 U.S. 870, 873 n.3 (1984); 20 C.F.R. § 402.35(b)(1). "While they do not have the force of law, they are entitled to deference unless they are clearly erroneous or inconsistent with the law." Pass v. Chater, 65 F.3d 1200, 1204 n.3 (4th Cir. 1995).

9

can perform. The ALJ also explained his consideration of material inconsistencies and ambiguities in the evidence.

Carolyn's alleged need to alternate between sitting and standing is a subjective assertion. It is not referenced in her treatment records, nor is it recommended by any of the treating, consultative or reviewing physician opinions in the record. Indeed, Carolyn's testimony about this requirement is inconsistent, as she said she could not sit or stand for more than 30 minutes at a time and then later stated that she often was required to stand for 6 hours at a time with no break during her current employment at Sam's Club. R. 74.

The ALJ acknowledged Carolyn's limited ability for standing, walking, and sitting due to her various severe impairments, but found that she was capable of sustained standing, walking and sitting for 4 to 6 hours in an 8-hour workday. In support of this conclusion, the ALJ noted that Carolyn complained of back and knee pain but had no deficits with gait, strength or sensation in her treatment records; her conditions were managed with non-narcotic medications; she was not prescribed additional treatments, such as muscle relaxers, pain management, physical therapy, chiropractic treatment, or steroid injections; she did not see a specialist for her back, hip or knee pain; and she stopped working at her previous full-time employment for reasons unrelated to her physical impairments. R. 44–45. The ALJ noted that the reviewing and consultative physicians found that Carolyn could stand and walking 4 to 6 hours in an 8-hour workday. Notably, none of the physicians recommended an accommodation to alternate between sitting and standing.

The ALJ stated that he restricted Carolyn to light work with standing and walking 4 to 6 hours "to accommodate for claimant's obesity, degenerative disc disease and mild curvature, arthralgia, hypertension, diabetes, COPD and sleep apnea." R. 44. The ALJ found that the record

10

supports a finding that Carolyn can stand or walk for 4 to 6 hours in an 8-hour day and noted that Carolyn testified that she was working shifts of six hours and would often be so busy that she would not be allowed to sit. R. 45, 74. Further, the vocational expert testified at the administrative hearing that the jobs provided in response to the ALJ's hypothetical RFC were for "light work that allows for some sitting throughout the day…as opposed to say a cashier at Walmart, or a flagger, or some things where you just don't get to sit at all." R. 85–86.

Thus, substantial evidence supports the ALJ's conclusion that Carolyn's subjective assertion that she cannot stand, walk, or sit for more than 30 minutes at a time is not supported by the record and does not require an additional limitation in the RFC. As noted above, an ALJ's narrative discussion of all the evidence in support of his findings in determining a claimant's RFC is sufficient to comply with the function-by-function analysis under SSR 96-8P.

Carolyn also asserts that the ALJ failed to consider whether her impairments would cause her to experience episodes of pain necessitating breaks and how often those breaks would occur. Pl. Br. Summ. J. p. 15. Carolyn provides no basis for this argument, such as medical records reflecting that she requires breaks due to pain or even her own subjective statements to support an argument that such breaks are necessary. Attacking whether substantial evidence exists requires more than simply identifying medical records or statements that are inconsistent with the ALJ's findings. A claimant must show that the ALJ used an improper legal standard, did not consider a relevant portion of the record, did not satisfy the duty of explanation, or the overwhelming weight of inconsistent evidence overcomes the very low substantial evidence standard. The Fourth Circuit is clear that an ALJ's findings "as to any fact, if supported by substantial evidence, shall be conclusive." Hart v. Colvin, No. 5:169cv32, 2016 WL 8943299, at *3 (N.D.W. Va. Sept. 14, 2016) (quoting Walls v. Barnhart, 296 F. 3d 287, 290 (4th Cir. 2002)).

The ALJ is not required to make specific findings related to Carolyn's subjective assertions that she requires breaks due to pain. See Shinaberry, 2020 WL 908887, at *6 (ALJ did not err in refusing to fully credit claimant's subjective statements regarding her physical limitations where claimant pointed to no medical evidence in support of a limitation.). The ALJ was only required to create a narrative discussion that builds "an accurate and logical bridge from the evidence to his conclusion," which the ALJ did in his discussion of the medical and non-medical evidence, Carolyn's alleged symptoms, and the medical opinions of record. Because I was not "left to guess" at how the ALJ reached his RFC determination, I find that the ALJ's conclusion is supported by substantial evidence. Mascio, 780 F.3d at 637.

### Subjective Allegations

Carolyn also alleges that the ALJ failed to properly assess her subjective allegations regarding her need to sit for 30 minutes every hour, her fatigue, grogginess due to sleep apnea, and shortness of breath due to COPD. Pl. Br. Summ. J. p. 16. Carolyn asserts that the ALJ does not specifically address her subjective allegations and his conclusion has "no apparent rationale." Pl. Br. Summ. J. p. 17. Carolyn also disagrees with the ALJ's finding that she stopped working for reasons unrelated to her medical condition, asserting that she could not perform her past relevant work because she cannot sit for a long period of time without standing up and walking around. Pl. Br. Summ. J. p. 18. Carolyn also objects to the ALJ's conclusion that her medical condition did not significantly change prior to and after her alleged period of disability. Id.

Carolyn's argument in this section of her brief restates her arguments related to the ALJ's physical RFC findings and function-by-function analysis, already addressed above. Carolyn does not identify any subjective complaints that the ALJ failed to consider. Nor does Carolyn identify specific instances in this case whether the ALJ improperly applied the legal standards.

12

Rather, Carolyn asks this court to re-evaluate her subjective allegations and come to a different conclusion from that of the ALJ. That is not the standard of a social security appeal.

Under the regulations implementing the Social Security Act, an ALJ follows a two-step analysis when considering a claimant's subjective statements about impairments and symptoms. SSR 16-3P, 2017 WL 5180304 (S.S.A. Oct. 25, 2017); 20 C.F.R. §§ 404.1529(b)–(c), 416.929(b)–(c). First, the ALJ looks for objective medical evidence showing a condition that could reasonably produce the alleged symptoms, such as pain. Id. at *3, §§ 404.1529(b), 416.929(b). Second, the ALJ must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's ability to work. Id. §§ 404.1529(c), 416.929(c). At this step, objective evidence is not required to find the claimant disabled. Thus, the ALJ must "examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." Id. (emphasis added).

A reviewing court gives great weight to the ALJ's assessment of a claimant's statements and should not interfere with that assessment where the evidence in the record supports the ALJ's conclusions. See Shively v. Heckler, 739 F.2d 987, 989–90 (4th Cir. 1984). Further, a reviewing court will defer to the ALJ's credibility finding except in those "exceptional" cases where the determination is unclear, unreasonable, contradicts other findings of fact, or is based on an inadequate reason or no reason at all. See Bishop v. Comm'r of Soc. Sec., 583 Fed. Appx. 65, 68 (D. Md. May 4, 2016) (citing Edeco, Inc. v. NLRB, 132 F.3d 1007, 1011 (4th Cir. 1997)).

Substantial evidence supports the ALJ's determinations regarding Carolyn's allegations. The ALJ reviewed Carolyn's testimony in detail, along with the evidence of record. The ALJ

found that Carolyn's statements concerning the limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record. R. 42–44. The ALJ outlined his reasons for this determination in detail and his reasoning is examined above. R. 44–45. The ALJ acknowledged Carolyn's conditions, stating,

> The facts in the record do not dispute that the claimant has conditions, which singly or in combination, may cause her pain or other difficulty. What these pieces of evidence suggest is that the claimant's symptoms may not exist at the level of severity assumed by the claimant's testimony at the hearing and may have other mitigating factors against their negative impact on the claimant's ability to engage in work activity.

R. 44.

Specifically, the ALJ noted that Carolyn left her prior work for reasons unrelated to her medical condition; her records did not reflect a significant change in her physical condition prior to and after her alleged date of disability; all of the physician opinions in the record support the RFC limitations; Carolyn currently works at a level close to substantial gainful activity and the level of activity required at her current job supports the RFC restrictions. R. 44. Work activity that is not substantial gainful activity is still "evidence relevant to the severity of [Carolyn's] impairment[s]," and can be considered in assessing the severity of a claimant's symptoms. See 20 C.F.R. § 404.1529(c).

I reviewed the ALJ's findings on the issues of Carolyn's need to alternate between sitting and standing above, and I adopt those same findings here. The ALJ considered Carolyn's grogginess and fatigue and accommodated those symptoms by limiting her to no exposure to hazards or unprotected heights. R. 44. See Ladda v. Berryhill, 749 Fed. Appx. 166 (4th Cir. Oct. 18, 2018) (upholding the ALJ's credibility determination because the ALJ explained his reasoning and weighed the claimant's subjective statements against other evidence.)

**CONCLUSION**

I **RECOMMEND** entering an order **AFFIRMING** the final decision of the Commissioner, **GRANTING** summary judgment to the defendant, **DENYING** plaintiff's motion for summary judgment, and **DISMISSING** this case from the court's docket.

The Clerk is directed to transmit the record in this case to Michael F. Urbanski, Chief United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objections, including the waiver of the right to appeal.

Entered: August 2, 2021

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge