CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

SEP 2 9 2021

JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | |
|---|---|
| **CAROLYN M.,** | ) |
| | ) |
| Plaintiff | ) Civil Action No. 7:20-CV-88 |
| | ) |
| v. | ) |
| | ) |
| **KILOLO KIJAKAZI, Acting** | ) |
| **Commissioner of Social Security,** | ) By: Michael F. Urbanski |
| | ) Chief United States District Judge |
| Defendant | ) |

## MEMORANDUM OPINION

This social security disability appeal was referred to the Honorable Robert S. Ballou,

United States Magistrate Judge, pursuant to 28 U.S.C. § 636(b)(1)(B), for proposed findings of

fact and a recommended disposition. The magistrate judge filed a report and recommendation

("R&R") on August 2, 2021, recommending that plaintiff's motion for summary judgment be

denied, the Commissioner's motion for summary judgment be granted, and the

Commissioner's final decision be affirmed. Plaintiff Carolyn M. ("Carolyn") has filed

objections to the R&R and this matter is now ripe for the court's consideration.

## I. Background

Carolyn filed an application for Disability Insurance Benefits (DIB) on January 19,

2016, alleging an onset date of September 1, 2014. R. 198, 201. She alleged disability based on

chronic obstructive pulmonary disease (COPD), gastroesophageal reflux disease (GERD),

sleep apnea, arthritis in her neck-status post neck surgery, left shoulder pain-status post

shoulder surgery, right shoulder pain, numbness in her hands and fingers, low back pain-status

post back surgery, right hip and knee pain, and depression and anxiety. R. 241. Carolyn's claim progressed through the administrative process and a hearing in front of an administrative law judge (ALJ) was held on November 7, 2018.

Following the hearing, the ALJ found that Carolyn had severe impairments of obesity, degenerative disc disease and mild curvature, arthralgias, hypertension, diabetes, COPD, and sleep apnea. The ALJ found that Carolyn had the residual functional capacity (RFC) to perform light work as defined in 20 CFR § 404.1567(b) except she is able to stand and walk for 4 to 6 hours in an 8-hour workday. She could never crawl or be exposed to unprotected heights, could occasionally climb ramps and stairs, balance, stoop, kneel, and crouch. She could tolerate occasional exposure to vibrations and pulmonary irritants. The ALJ found that Carolyn could return to her past relevant work as a doctor's office receptionist, tax preparer, and telephone representative, all of which were sedentary. Because she could return to her past relevant work, the ALJ found that Carolyn was not disabled. The Appeals Council denied Carolyn's request for review, R. 1-4, making the ALJ decision the final decision of the Commissioner.

This lawsuit followed. The magistrate judge found that the ALJ determination was supported by substantial evidence and Carolyn has objected to several of the magistrate judge's findings.

## II. Standard of Review of Magistrate Judge Decision

The objection requirement set forth in Rule 72(b) of the Federal Rules of Civil Procedure[1] is designed to "train[ ] the attention of both the district court and the court of appeals upon only those issues that remain in dispute after the magistrate judge has made findings and recommendations." United States v. Midgette, 478 F.3d 616, 621 (4th Cir. 2007) (citing Thomas v. Arn, 474 U.S. 140, 147–48 (1985)). An objecting party must do so "with sufficient specificity so as reasonably to alert the district court of the true ground for the objection." Id. at 622.

> To conclude otherwise would defeat the purpose of requiring objections. We would be permitting a party to appeal any issue that was before the magistrate judge, regardless of the nature and scope of objections made to the magistrate judge's report. Either the district court would then have to review every issue in the magistrate judge's proposed findings and recommendations or courts of appeals would be required to review issues that the district court never considered. In either case, judicial resources would be wasted and the district court's effectiveness based on help from magistrate judges would be undermined.

Id.

The district court must determine de novo any portion of the magistrate judge's report and recommendation to which a proper objection has been made. "The district court may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1).

---

[1] "Within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b).

If, however, a party "'makes general or conclusory objections that do not direct the court to a specific error in the magistrate judge's proposed findings and recommendations,'" de novo review is not required. Diprospero v. Colvin, No. 5:13-cv-00088-FDW-DSC, 2014 WL 1669806, at *1 (W.D.N.C. 2014) (quoting Howard Yellow Cabs, Inc. v. United States, 987 F. Supp. 469, 474 (W.D.N.C. 1997) and Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982)). "The district court is required to review de novo only those portions of the report to which specific objections have been made." Roach v. Gates, 417 F. App'x 313, 314 (4th Cir. 2011). See also Camper v. Comm'r of Soc. Sec., No. 4:08cv69, 2009 WL 9044111, at *2 (E.D. Va. 2009), aff'd, 373 F. App'x 346 (4th Cir.) ("The court will not consider those objections by the plaintiff that are merely conclusory or attempt to object to the entirety of the Report, without focusing the court's attention on specific errors therein."); Midgette, 478 F.3d at 621 ("Section 636(b)(1) does not countenance a form of generalized objection to cover all issues addressed by the magistrate judge; it contemplates that a party's objection to a magistrate judge's report be specific and particularized, as the statute directs the district court to review only 'those portions of the report or specified proposed findings or recommendations to which objection is made.'") (emphasis in original). Such general objections "have the same effect as a failure to object, or as a waiver of such objection." Moon v. BWX Technologies, 742 F. Supp. 2d 827, 829 (W.D. Va. 2010), aff'd, 498 F. App'x 268 (4th Cir. 2012). See also Arn, 474 U.S. at 154 ("[T]he statute does not require the judge to review an issue de novo if no objections are filed . . . .")

Rehashing arguments raised before the magistrate judge does not comply with the requirement set forth in the Federal Rules of Civil Procedure to file specific objections. Indeed,

objections that simply reiterate arguments raised before the magistrate judge are considered to be general objections to the entirety of the report and recommendation. See Veney v. Astrue, 539 F. Supp. 2d 841, 844-45 (W.D. Va. 2008). As the court noted in Veney:

> Allowing a litigant to obtain de novo review of her entire case by merely reformatting an earlier brief as an objection "mak[es] the initial reference to the magistrate useless. The functions of the district court are effectively duplicated as both the magistrate and the district court perform identical tasks. This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act." Howard [v. Sec'y of Health & Human Servs.], 932 F.2d [505,] [] 509 [(6th Cir. 1991)].

Veney, 539 F. Supp. 2d at 846. A plaintiff who reiterates her previously-raised arguments will not be given "the second bite at the apple she seeks;" instead, her re-filed brief will be treated as a general objection, which has the same effect as would a failure to object. Id.

## III. Judicial Review of Social Security Determinations

It is not the province of a federal court to make administrative disability decisions. Rather, judicial review of disability cases is limited to determining whether substantial evidence supports the Commissioner's conclusion that the plaintiff failed to meet his burden of proving disability. See Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). In so doing, the court may neither undertake a de novo review of the Commissioner's decision nor re-weigh the evidence of record. Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992). Evidence is substantial when, considering the record as a whole, it might be deemed adequate to support a conclusion by a reasonable mind, Richardson v. Perales, 402 U.S. 389, 401 (1971), or when it would be sufficient to refuse a directed verdict in a jury trial. Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996).

Substantial evidence is not a "large or considerable amount of evidence," Pierce v. Underwood, 487 U.S. 552, 565 (1988), but is more than a mere scintilla and somewhat less than a preponderance. Perales, 402 U.S. at 401; Laws, 368 F.2d at 642. "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Biestek v. Berryhill, 139 S.Ct. 1148, 1154 (2019) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed. 42 U.S.C. § 405(g); Perales, 402 U.S. at 401.

## IV. Plaintiff's Objections[2]

Carolyn objects to the following findings by the magistrate judge: (1) The ALJ made a proper RFC assessment and properly assessed how long Carolyn can sit, stand, and walk and whether she would need to take breaks because of pain; and (2) the ALJ properly considered Carolyn's subjective complaints.

## V. Analysis

### A. RFC Assessment

The process for assessing a claimant's RFC is set forth in SSR 96-8P, 1996 WL 374184 (S.S.A. July 2, 1996). The ruling sets out in relevant part the following:

> The RFC must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 CFR 404.1545 and 416.945. Only after that may the RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy.

---

[2] Detailed facts about Carolyn's impairments and medical and procedural history can be found in the report and recommendation (ECF No. 20) and in the administrative transcript (ECF No. 8) and will not be repeated here except as necessary to address her objections.

Id. at *1. Physical abilities set out in 20 C.F.R. 404.1545(b) and 416.945(b) include sitting, standing, walking, lifting, carrying, pushing, pulling, reaching, handling, stooping, and crouching. Mental abilities set out in paragraph (c) of the regulation include understanding, remembering, and carrying out instructions, and responding appropriately to supervision, co-workers, and work pressures in a work setting. Other abilities set out in paragraph (d) of the regulation include those affected by skin impairments or epilepsy, impairment of vision, hearing, or other senses, or impairments which impose environmental restrictions.

The RFC analysis must include a narrative discussion describing how the evidence supports each conclusion. The ALJ must cite specific medical facts such as lab results and nonmedical evidence such as daily activities and observations of the claimant. The ALJ must discuss the claimant's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis and describe the maximum amount of each work-related activity the claimant can perform based on the evidence in the case record. The ALJ also must explain how he considered and resolved any material inconsistencies or ambiguities in the record. SSR 96-8P, 1996 WL 374184 at *7.

The ALJ determined that Carolyn can do light work with additional limitations. The regulations define "light work" as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

7

20 C.F.R. § 404.1567. The ALJ limited Carolyn to standing and walking for four to six hours in an eight-hour day. R. 41. Carolyn argued to the magistrate judge that the ALJ failed to conduct a function-by-function analysis and in particular, failed to assess how long Carolyn can stand before she needs to sit and how long she needs to sit before she can stand again. She argued that the ALJ appeared to base his assessment on Carolyn's part-time work at Sam's Club, about which she testified that she works six-hour shifts four days per week but is given the special accommodation of using a stool that allows her to sit down as needed based upon the number of customers in her area.[3]

The magistrate judge found that the ALJ performed the required analysis and appropriately considered Carolyn's ability to perform work activities in an ordinary work setting on a regular and continuing basis. He found that Carolyn's alleged need to alternate between sitting and standing was a subjective assertion, not referenced in the treatment records or recommended by any of the physicians who treated or examined Carolyn or reviewed her medical records. In addition, the magistrate judge found that the ALJ supported his conclusions with citation to the record.

Carolyn objects that the magistrate judge ignored evidence from her treating physician, Dr. Nazli, who stated that she required a stool to work at Sam's Club so that she could alternate between sitting and standing while at work. However, neither the magistrate judge nor the ALJ ignored the evidence. The magistrate judge cited Carolyn's testimony that she received a special accommodation that allowed her to sit for 30 minutes every hour, as she is able, based

---

[3] The ALJ found that Carolyn's limited work at Sam's Club was not considered substantial gainful activity, at least prior to a raise she received in October 2018. R. 36, 58.

8

upon the number of customers at her station. R&R, ECF No. 20 at 4 (citing R. 73-74). The ALJ also cited to her testimony. R. 36. Both the ALJ and the magistrate judge also noted Carolyn's testimony that she was often too busy to sit while she was working at Sam's Club. R&R, ECF No. 20 at 4; R. 36, 45, 73-74.

Carolyn argues that because the ALJ did not find that she needed a sit/stand option, the hypothetical question presented to the vocational expert at the hearing was error. In the hypothetical question, the ALJ limited the person to walking or standing four to six hours in an eight-hour day. The ALJ also asked the vocational expert to consider jobs that allowed for some sitting throughout the day, as opposed to "a cashier at WalMart, or a flagger, or some things where you just don't get to sit at all." R. 86. Carolyn argues that the ALJ should have specified how long the person could stand, sit, and walk at a time and appears to argue that she cannot do any of those activities for more than thirty minutes at a time.

Turning first to her argument that she cannot sit, stand, or walk for longer than thirty minutes at a time, the record does not support such a conclusion. As pointed out by the ALJ, objective testing showed that Carolyn's strength and sensation were normal, with no deficits noted in her gait, and that she did not complain regularly to her treatment providers about back or knee pain. R. 42, 43. On June 7, 2017, a consultative examination showed that her back was tender to palpation at her lower thoracic and lumbar regions and there was mild dorsal kyphosis but no spasm. Her straight-leg test was negative. There was mild enlargement of the IP joints in her upper and lower extremities, but no significant tenderness or deformity. Her gait was mildly antalgic on the right with some guarding of her lower back movement. She was able to briefly heel and toe walk and performed a tandem gait adequately. Her lower

9

extremity strength was normal with no atrophy. She had some mild alterations to light touch at the dorsum of her feet and slightly reduced range of motion in her cervical and thoracolumbar spine, as well as in her hips and knees. R. 43, 457-460. The ALJ also cited to the opinion evidence of the state agency physicians, who found Carolyn could do light work but was limited to four hours of walking and additional postural and environmental limitations. R. 44, 90-100, 102-116.

Also, as observed by the ALJ, Carolyn testified that she stopped working at her previous job as a receptionist in a doctor's office for reasons unrelated to her alleged impairments. She stated that she could sit in a car for a few hours before needing to stop and that she drove to see her mother in Florida a few times per year. She testified that she could do chores such as cooking, laundry, and cleaning, albeit with breaks, and that she walks for exercise with her husband for one-and-a-half miles, which takes her approximately an hour. R. 42, 81. And, as noted, although Carolyn testified that her doctor wrote a note on her behalf asking that she be given a stool to sit on at work when she needs to, she also testified that when it gets busy at work that she must stand and there is "not really a whole lot of sitting." R. 74.

For the same reasons that the record does not support a finding that Carolyn can sit, stand, or walk for only thirty minutes at a time, the ALJ's decision to not include a sit/stand option in his hypothetical question to the vocational expert was not error. Nothing in the record, other than the doctor's note described by Carolyn and her testimony at the hearing, R. 72-73, limits her to needing to change position every thirty minutes. And as described above,

other evidence in the record indicates that she can sit, stand, and walk for longer than thirty minutes at a time.

Carolyn also argues that the ALJ erred because he failed to consider whether her impairments would cause her to experience episodes of pain necessitating breaks and how often the breaks would need to occur. However, the ALJ acknowledged Carolyn's fatigue and restricted her to light work, with no exposure to hazards or unprotected heights "because of her sleep apnea and resulting fatigue." R. 44. Carolyn points to nothing in the record, other than the accommodation of the stool recommended by Dr. Nazli, to suggest that she experiences pain or other symptoms that would require her to take breaks other than those routinely provided by employers.

Finally, Carolyn asserts that the ALJ in her case made the same error as the ALJ in Monroe v. Colvin, 826 F.3d 176, 190 (4th Cir. 2018). In Monroe, the ALJ acknowledged that the claimant suffered from sleep apnea and narcolepsy, and the claimant testified that he would lose consciousness two or three times per day and would need to take breaks because of fatigue. Id. at 188. However, the ALJ did not make specific findings about whether the claimant's sleep apnea and narcolepsy would cause him to experience loss of consciousness at work or fatigue such that he would need breaks. Id. The court remanded that case with instructions that the ALJ consider the narcolepsy and apnea along with the claimant's other impairments and determine on a function-by-function basis how they affected his ability to work. Id.

In Carolyn's case, the ALJ acknowledged that she suffers from fatigue along with her other impairments and limited her to a reduced range of light work with no exposure to

11

hazards or unprotected heights to accommodate the fatigue. He stated that her conditions may cause her pain or other difficulty, but the evidence as a whole suggested that her symptoms were not as severe as she described at the hearing. The ALJ concluded that the RFC gave adequate weight to Carolyn's complaints that he determined to be consistent with the evidence. R. 44. The ALJ did not make the same mistake as the ALJ in Monroe because he acknowledged and accommodated Carolyn's complaints of pain and fatigue.

The RFC assessment is supported by substantial evidence. The ALJ based his determination that Carolyn can do a limited range of light work on the objective evidence in the record and on her testimony about her daily activities. He explained how he considered and resolved the inconsistencies and ambiguities in the record. This explanation complies with SSR 96-8p, 1996 WL 362207 at *7. Accordingly, the court finds no error in the magistrate judge's analysis of the RFC assessment and **OVERRULES** Carolyn's objection on this issue.

### B. Subjective Allegations

Carolyn objects to the magistrate judge's finding that the ALJ properly considered her subjective complaints of pain and that she did not identify any subjective complaints the ALJ failed to consider. In assessing subjective complaints, the ALJ must first determine if the claimant made a showing by objective evidence that there exists a medical impairment which could reasonably be expected to produce the actual pain in the amount and degree alleged by the claimant. Tanner v. Comm'r of Soc. Sec., 602 F. App'x 95, 99 (4th Cir. 2015) (citing Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996)). If the claimant meets the threshold showing, the ALJ must evaluate the "'intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work.'" Id. (quoting Craig, 76 F.3d at 595).

The evaluation takes into account all available evidence, including "the claimant's medical history, medical signs, laboratory findings, ... evidence of the claimant's daily activities, specific descriptions of the pain, and any medical treatment taken to alleviate it." [Craig, 77 F.3d at 595] The claimant's allegations regarding the severity and persistence of pain cannot be dismissed solely because objective evidence of pain is lacking; at the same time, however, the claimant's allegations "need not be accepted to the extent they are inconsistent with the available evidence." Id.

Tanner, 602 F. App'x at 99.

Substantial evidence supports the ALJ determination that Carolyn's subjective allegations were not fully supported by the evidence. She argues that the ALJ did not address her complaints of grogginess and fatigue, which she claims affect her ability to sustain work activity over the course of an eight-hour day and are not accommodated by a limitation to not working around hazards or unprotected heights. However, in order to show that the ALJ erred in assessing her subjective complaints, Carolyn must point to something in the record to support her allegation that feeling groggy and fatigued renders her unable to work an eight-hour day.

The only reference to grogginess in the record is Carolyn's testimony that when she first started using a CPAP machine for sleep apnea she would feel "really good" in the morning when she woke up, but she now sometimes is still groggy when she wakes up. R. 81. When asked if she had trouble concentrating in job at Sam's Club she said she did not. R. 83. Carolyn pointed to nothing in the record, other than her own equivocal testimony, to support her claim that she is too groggy and fatigued to work an eight-hour day.

Carolyn also asserts that the ALJ ignored her subjective complaints that she cannot sit for longer than thirty minutes at a time. R. 72-73. The ALJ acknowledged that Carolyn testified that she could not work in part because of pain in multiple joints and her back. R. 41. However,

13

he did not find her allegations to be consistent with the record. He described X-rays in the record that showed that her right hip joint was maintained and there were no acute findings and that she had mild to severe degenerative changes at other levels in her lumbar spine. R. 43. He cited to the opinions of the state agency physicians that Carolyn could perform light work with additional limitations. R. 44. The ALJ also cited to the opinion of the consultative examiner who opined that based on his examination, Carolyn could stand, walk, and sit for six hours in an eight-hour day. R. 45.

The court agrees with the magistrate judge that substantial evidence supports the ALJ's assessment of Carolyn's subjective allegations. The ALJ cited to the evidence upon which he relied to find that she is not as impaired by pain, fatigue, and grogginess as she asserts. Carolyn has pointed to no evidence in the record that the ALJ failed to consider. Therefore, her objection on this issue is **OVERRULED**.

## VI. Conclusion

For the reasons stated, the court finds no error in the magistrate judge's conclusion that the ALJ decision is supported by substantial evidence. As such, the magistrate judge's report and recommendation will be adopted in its entirety.

An appropriate Order will be entered.

It is so **ORDERED**.

Entered: September 29, 2021

Michael F. Urbanski
Chief United States District Judge

14